Beulah WALLACE, administratrix of the estate of J. H. Wallace, deceased, and Effie Wallace, d/b/a Wilburton Lumber Company, Appellants,

v.

Alex SWAFFORD, Appellee.

No. 6134.

United States Court of Appeals Tenth Circuit.

Dec. 16, 1959.

Rehearing Denied Jan. 22, 1960.

---

W. F. Kyle, Tulsa, Okl., for appellants.

Neal E. McNeill, Jr., Tulsa, Okl., for appellee.

Before BRATTON, LEWIS and BREITENSTEIN, Circuit Judges.

LEWIS, Circuit Judge.

This is a quiet title action involving lands once held by the Missouri, Kansas and Texas Railway Company and since abandoned by the railroad. We have earlier considered one phase of the controversy, City of Wilburton, Oklahoma, v. Swafford, 10 Cir., 253 F.2d 479, determining, after review of the applicable statutes, that abandonment of the railroad easement did not vest title in the City of Wilburton. The instant action arises by way of supplemental and ancillary complaint filed by Swafford in the original action and now makes present appellants parties for the first time. Original jurisdiction was based upon the necessity of construing the Act of April 26, 1906 (34 Stat. 137) providing for the disposition of unallotted lands and continuing jurisdiction is not disputed. City and County of Denver v. Denver Tramway Corporation, 10 Cir., 23 F.2d 287.

The former opinion of this court established that in 1912 a plat of Latimer County, Oklahoma, Township Addition Number 4, was filed in the office of the Secretary of the Interior as a part of the segregated coal and asphalt lands of the Choctaw-Chickasaw Nations. This plat shows Lots 69 and 70 with the north 1.15 acres of Lot 69, and the north 5

acres of Lot 70 occupied by the railroad right of way. In 1930 the Indian Tribes conveyed to the Degnan-McConnell Coal and Coke Company certain lands including " \* \* \* Lot No. Sixty-nine (69), including one and ¹⁵⁄₁₀₀ (1.15) acres subject to right of way for the Missouri, Kansas and Texas Railway \* \* \* and Lot No. Seventy (70) including five and no/100 (5.00) acres subject to right of way for M. K. & T. Railway \* \* \*." By conveyance these lands passed to James McConnell. Lot 70 and Lot 69 adjoin, with Lot 70 being east of Lot 69. United States Highway No. 270 crosses the southern boundary line of Lot 69 at a point east of the center thereof and proceeds diagonally in a northeasterly direction across each lot and then departs at the eastern boundary line of Lot 70 just north of the mid-point thereof. The railroad right of way in question is in the northerly portion of the two lots. The plat shows the westerly and easterly boundary lines of each lot going to the northern boundary line of the railroad right of way. In Lot 70 the railroad right of way is enlarged to accommodate depot facilities.

We are not concerned with that portion of Lots 69 and 70 lying southerly of U. S. Highway 270. Such portion of these lots McConnell conveyed by deed recorded in Book 32, page 85, of the County Records. On March 18, 1935, by deed recorded in Book 25 at page 521, McConnell conveyed certain property to Agnes Carignano. Included therein was the following:

> "All of Lot No. 70 West of U. S. Highway No. 270 the same to contain 0.48 acres, more or less, all of Lot No. 60 West of U. S. Highway No. 270 the same to contain 4.95 acres, more or less, \* \* \*."

In 1947 Carignano conveyed this property to the Wallaces. McConnell died in 1942 and in 1945 the executor of his estate executed to Swafford a deed for property described as follows:

> "Lot 69, Townsite Addition No. 4, Latimer County, Oklahoma, (Less that part conveyed by deed recorded in Book 25, page 521;) $20.00
> "Lot 70, Townsite Addition No. 4, Latimer County, Oklahoma, (Less that part conveyed by deed recorded in Book 32, page 85;) $60.00."

Since appellants and appellee both claim through James McConnell the particular question involved in this appeal is whether the McConnell-Carignano deed, through which appellants claim, included the land under the railway right of way thus making it unavailable to sale by the executor. The trial court held that the McConnell-Carignano deed did not include the disputed lands and that upon abandonment of the railway right of way such lands reverted to the original owner rather than to the owners of the abutting tracts from which the right of way was carved.

The general rule in Oklahoma is that a presumption exists that the servient estate in a strip of land set apart for a railroad right of way, highway or other comparable public purpose, passes with a conveyance of the fee to the abutting legal subdivision or tract out of which the right of way or other strip was carved even though no express provision to that effect is contained in the conveyance; and on the abandonment of the strip for the purpose for which it was set apart, the dominant estate becomes extinguished and the entire title and estate vests in the owner of such abutting legal subdivision or tract. United States v. Magnolia Petroleum Co., 10 Cir., 110 F.2d 212; United States v. Drumb, 10 Cir., 152 F.2d 821; Seminole Nation v. White, 10 Cir., 224 F.2d 173; Chickasha Cotton Oil Co. v. Town of Maysville, 10 Cir., 249 F.2d 542.

But the application of such general rule is not without exception and Oklahoma has clearly indicated that circumstances may rebut the presumption and indicate an intent upon the part of the grantor to limit the extent of the grant. In referring to the rule Oklahoma has recently stated:

> "The common appellation by which the rule is known foretells

the qualification on the applicability of the presumption which, in its use, sometimes requires a result not altogether consistent with the plain language of an instrument. The policy of the law expressed by the rule is the abolition of 'strips and gores' ownership of property except when the intent is plainly contrary to the presumption. The rule is not applicable to all deeds to property abutting on right of ways simply because of that fact alone. It is merely a presumption which may be rebutted by the circumstances." Hill v. Cunningham, Okl., 329 P.2d 1034, 1036.

It follows that the trial court properly considered evidence probing the intent of the grantor and we cannot say that the court's determination of that question of fact is clearly erroneous. Certain strong circumstances indicate that McConnell intended to deed no more than that specifically described in the conveyance. The railroad right of way was not a mere track easement but the location of the former depot and other railroad buildings. It contained 8.74 acres as compared to the 5.48 acres of deeded land and consequently cannot be designated as a "strip or gore" which the presumptive rule attempts to eliminate. The value of the servient land was not dependent upon the adjoining land nor was it so insignificant in size or value that the grantor might have overlooked his ownership of it. That the grantor did not, in fact and under these circumstances, intend to include the railroad lands in the Carignano deed may be emphasized by his careful designation of acreage and location of the lands as west of the highway whereas the railroad easement was north of the highway. The combined circumstances convinced the trial court that the intent of the grantor was to retain his ownership of the lands occupied by the railroad, a determination not clearly erroneous, and the judgment is therefore affirmed.